Our first case today, the only case for this panel actually, is Lane v. Anderson. Mr. Hoffman, I'd be pleased to hear from you, sir. May it please the Court. My name is Howard Hoffman, and with me is Sean Hopwood, Co-Counsel. Seated behind me is former Deputy James Lane, who I have the privilege of representing on this appeal. I'm an attorney from Rockville, Maryland. Justice Stevens once said in an 11th Amendment case that 11th Amendment jurisprudence has evolved into an engine of injustice, and this case is no better example of that. In this case, despite the complexities of the claims and the allegations, the District Court rested its decision to dismiss much of this case, virtually all of the claims, on its reliance on a Maryland court decision, Rucker v. Hartford County. As a result, virtually every decision in this case is wrong and requires reversal. What is important throughout this case, as we shall see, is that there is not a shred of evidence, at least in this record, that the Maryland Treasury is legally or practically ever put at risk by a tort committed by a sheriff or deputy sheriff in the state of Maryland. Given the complexities of this case and its incomplete record at this stage, the case should be remanded for further proceedings. By way of brief background... Your opponents say that essentially that requires them to prove it counterfactual, because if in fact the sheriff is a state officer, then he's entitled to immunity and they would never have to pay anything out of the Treasury. What's your response to that? Well, the response to that is that it is the sheriff's burden to show that the state treasury is placed at risk. While that factor is typically important and dispositive, in this particular case, this court has already found and observed that following Rucker, the Maryland legislature revised its statutes and actually made it so that the counties would be responsible, one way or another, for the torts of Maryland sheriffs. He's the sheriff of Baltimore City? That's correct. Which is treated as a county in Maryland? For purposes of this argument, yes. That's right. Okay. So, in Johnson v. Chester, this court specifically said that the Maryland legislature appears to have ensured that, regardless of the characterization of the Maryland sheriff, the counties would pay for the sheriff's torts. So, in this particular instance, there's no evidence that the Maryland treasury is ever placed either as a legal matter or as a practical matter at risk by a judgment in this case. I thought the relevant Maryland statute placed the state treasury at risk, at least for some torts. Am I not remembering that correctly? Well, it's actually rather very circular. What Maryland has done is that they do have, for some torts, not federal constitutional claims, but for some torts, they have placed sheriffs within the Maryland Tort Claims Act. But in other sections of the Maryland Code, they state that counties shall be responsible for any judgment for those types of torts. And that if counties don't pay or don't purchase insurance for these types of claims, then the state may withhold tax remit from the counties for those costs that the state may incur. Is there any issue here about whether there's any insurance implicated? There is. Actually, the record in this case is undeveloped on the issue of insurance. This comes up here on 12B-6. That is correct. Right. But down in West Virginia, I remember our Supreme Court held one time that if they bought an insurance policy, they'd waive immunity. The state did. All I can say is at this stage, the City of Baltimore, upon information of belief, self-insures and does pay judgments on behalf of the sheriff and is responsible for those types of costs. But there's no evidence of insurance here. For example, some Maryland counties do purchase. Is there a conflict between the county and the state on this? Who's going to claim Anderson? There is. I mean, there's potential that the county will say, well, he's not our officer, he's the state's officer. There is. And vice versa. There can be a conflict between the county and the state pointing fingers at each other, especially with respect to employment torts. And both of them are in the case. I mean, lawyers represent both of them are in the case. Well, the sheriff being represented by the Attorney General's office. The sheriff being represented by the State Attorney General. Yes. So, by brief background, which is obviously covered in the briefs, former Deputy Lane spoke out on a matter of substantial public importance. He was part of a warrant apprehension task force. But 11th Amendment immunity doesn't protect an official from a suit as an individual under 1983. That's correct. This case was brought both against Sheriff Anderson in his official capacity and his personal capacity. And the district court dismissed the lawsuit as to both capacities. The official capacity claim being barred by the 11th Amendment against Sheriff Anderson. And the official capacity claim, if it's properly brought against him, and I'm not too sure it is, but it's in effect a suit against the state or a suit against the county, the entity. Well, we... You can't, other than to get reinstatement or something, you can't get money damages from the sheriff in official capacity, can you? Well, we contend that the sheriff is not an arm, that the sheriff of Baltimore City is... He's an arm of the county or he's an arm of the state, one or the other. But in either event, the only way you get damages from him individually is to sue him individually. And that's what 1983 is all about. 19... we do have a... Except for Monell claim. That goes against the entity. Correct. We have claims against the sheriff in his official capacity. We contend that he's not an arm of the state. We have claims against him in his... Then you want equitable relief under that? Yes, we do. You don't want money damage under that? No, we want money damages and... Well, you can't get money damages in an official capacity claim from the individual. You have to get that under the individual capacity claim. We can get money damages as a... When we plead the official capacity claim, we are, in other words, claiming that he's a part of the city of Baltimore... You're claiming against the entity? Against the entity, correct. Well, why didn't you just sue the entity? We did sue the entity under... Well, why didn't you sue him then? Why didn't you just sue him in his individual capacity? Clean it up. Well, I think we covered all of our bases. We both sued him in his official capacity, tackling the 11th Amendment issue. We also sued... But if you want equitable relief, you have to sue him in his official capacity and get an injunction against him. That's correct. That's right. But money is a different thing. Money is a different thing, so we also named the... As to money, the state is entitled to the 11th Amendment immunity, but the county is not. Does that seem to be like... That's a fight between you and the county, or between the county and the state. You don't represent the state. Ultimately, the question is, how do you characterize the sheriff of Baltimore City, at least with respect to the capacity that he's carrying out? Judge Bennett said it's a question of state law, right? And you say it's a question of federal law, and the 4th Circuit's got a test for it, right? What's that case called? That's precisely right. Ramdita? That's right. The Ramdita test. Ramdita test. A four-part test. And Judge Bennett said that test doesn't apply here. Judge Bennett didn't go through any of the Ramdita factors. He didn't evaluate the arguments with respect to... And you want us to say Ramdita applies, and we need to send it back to have it applied. Is that right? That's correct. How many counts would that affect? That would affect the official capacity count against the sheriff of the city of Baltimore. Do you think that we can apply Ramdita here today, and avoid a remand? I think that the record is largely undeveloped, and that discovery should occur in this case to determine more about the city of Baltimore's impact and its interconnectedness, if you will, with the Baltimore City Sheriff's Office. So the answer is no? The answer is I think remand is proper in this case. So the answer is no? The answer is no. We have to send it back. The case should be sent back for further factual development. On all the claims? Ramdita apply to all the claims? Well, actually, the case can be reversed on, for example, the district court's decision with respect to Roker Feldman. We think that that's clearly in error, and I don't believe that that requires further factual development. Furthermore... What claim is that? Well, that's with respect to the injunctive relief, reinstatement of former Deputy Lane. The other claim is qualified immunity. Further factual development to that claim is unnecessary. So the court can decide qualified immunity today. But with respect to the 11th Amendment and with respect to the Monel claim, with respect to the official capacity claim and with respect to the Monel claim, the court will have to remand for further factual development as it did in the Oberg decision. Mr. Hoffman, it seems a little bit inconsistent to me, at least at face value, to suggest that the sheriff has some things for one purpose and completely another thing for other purposes. So you're saying, with respect to your 1983 claim that the sheriff is an officer of the state, but with respect to the Monel claim, he's something else entirely. That just seems to me to not be consistent. I don't think that there's any inconsistency, because we're claiming throughout that the sheriff is not a state official. He is not a state official, clearly for employment purposes. The Dotson v. Chester and, in fact, McMillan v. Monroe County, Alabama, that's a Supreme Court case, both held... But I think what you've argued is that even if we find that he's an arm of the state, the sheriff is an arm of the state, that doesn't resolve the Monel claim, because there are factors that are entirely different there, and I'm having trouble going there. That is precisely right. The fact is that even if the sheriff is an arm of the state for some purposes, such as law enforcement, he may still be the final policymaker for the city of Baltimore with respect to the employment of his deputy sheriffs and other staff. One can be... I'm sorry. Go ahead. Dotson clearly states that a Maryland sheriff can be both a state official or a local official, or both. Well, with respect to what happened here, what's the best set of facts that support that he is a policymaker for the city of Baltimore? Well, the question is whether the termination represents city policy, and what we see here is that, like the sheriff in Dotson who maintained the jail for the county, the sheriff here maintains the employment relationship for the city of Baltimore. We've had numerous facts showing that the city of Baltimore is involved in the employment relationship of deputy sheriffs. For example, there is a civilian review board set up that the city of Baltimore has, which is unique to the city of Baltimore, in which the civilian review board can recommend discipline... But it's ultimately the sheriff who gets to decide who to fire or not, right? As a final policymaker for the city of Baltimore, that's correct. And you seem to allege somewhere in your complaint, if I remember correctly in your briefs, that the city has some independent authority to fire sheriff's deputies. It's my understanding that the city has some independent authority to lay off deputy sheriffs, and of course it also is involved in many facets of the employment relationship. But for example, speaking of Deputy Lane specifically, Deputy Lane was terminated by a lawyer, hired by and paid for by the city of Baltimore. That is a compelling fact that shows that the city of Baltimore has... I thought he was terminated by the sheriff. I'm sorry, he was terminated by the sheriff, but he was prosecuted before a trial board, which in Maryland is similar to a military court-martial. Police officers are entitled to a trial board, which is similar to a military court-martial, and he went before a trial board. The trial board attorney who prosecuted James Lane was a private attorney who was paid for by the city of Baltimore. And they found against him and recommended a five-day suspension, and the sheriff said that's not enough. That's right. I mean, he was charged with things such as speaking to the media. And the evidence on that was obvious. He did speak to the media. It was so admitted. And the sheriff changed the termination from five-day suspension to a termination. I see my time is up. Thank you, Mr. Hoffman. We appreciate it. Mr. Levine. Thank you, Your Honor. May it please the court. There are three reasons why this court should affirm Judge Bennett's granting of Sheriff Anderson's motion to dismiss. I want to address first the qualified immunity issue, because I think there's been a continued misplaced reliance on Durham v. Jones and Andrew v. Clark. And I think Judge Niemeyer last summer in the Hunter case, his dissent, really put it best. Durham simply concludes, as Judge Niemeyer described it unremarkably, that when you expose public corruption in a police department, that's speech on a matter of public concern. Nobody disputes that. Public corruption or serious misconduct? Either one. Corruption, serious misconduct. You don't think a cover-up involving an officer shooting is serious misconduct? If that's what was alleged and what the complaint demonstrates. Well, that's what the complaint alleges, and we have to accept the complaint as true for purposes of Rule 12. Here's why it doesn't allege that. They chose to include in their complaint an article that said 20 through 22 of the Joint Appendix. And I think that article is absolutely critical to understanding the framework of what Deputy Lane was alleging. Deputy Lane was involved in this shooting incident, gave a statement to Baltimore City police investigators. City Homicide conducted the initial investigation, where he told City Homicide investigators the suspect shot him, which was consistent with the physical evidence they recovered at the scene. Months later, he decides, now I'm not sure. And he goes to the Sheriff's Office and says, this may have been some sort of friendly fire incident. I just sort of assumed the suspect shot me. That's why I gave the statement. And he says it right here in the article. And the Sheriff's Office immediately opens an internal investigation into, in part, were you truthful with Baltimore City police investigators? And they determined that he was not. And they brought administrative charters on that basis. And it's very clear, if you look specifically, I would direct the court in particular to 21 at the Joint Appendix. Mr. Lane says, I did say the suspect shot him. I just assumed he shot me because I was shot. And then he later has doubts. And he says on 22 of the Joint Appendix in the article, they're saying I didn't come forth with this information. But I would have if I had it in the beginning. Mr. Lane is unhappy that the investigation is starting to focus on his own integrity and truthfulness issues. It's not a cover-up. And in fact, the article makes clear that the Sheriff's Office was conducting a thorough investigation, an ongoing, active, and confidential investigation. He's not saying, I said the suspect shot me because somebody told me to. Compared with Durham v. Jones, where the trial record very clearly established, at least the jury found, that the Sheriff had directed that deputy to lie. Well, let me stop you there. So you said, at least the jury found. So isn't that the problem here? This case is not going to get to a jury because it's been short-circuited by the judge? Well, they chose to include this article. If they wanted to simply plead in their complaint, there was a cover-up and plead certain facts. But to the extent there's any dispute between their allegations and this article they included, the article controls. It's an exhibit to the complaint? It's an exhibit to the complaint, absolutely. And the article establishes, I think very clearly, he's not reporting misconduct. If anything, maybe his own misconduct. The fact that the Sheriff's office was taking the position, you were not truthful with city police investigators. That's what he's telling the media because he was dissatisfied that the investigation focused on him. So, for that reason, Durham v. Jones is really not controlling at all and easily distinguishable. And if we look at Sheriff Anderson's comments that were quoted by the Court of Special Appeals in affirming his termination at page 73 of the joint appendix. He says, your comments were intended to derail an internal investigation about an important matter. The only plausible reason for making and publicizing your opinions as you did was to, in fact, keep the investigation from moving forward. Well, I mean, that's his view of the evidence. And I get your point that the article at least presents an inconsistency in the plaintiff's view of the case. But is that sufficient at the 12 v. 6 stage to just stop? All stop? Full stop? I think it's sufficient when we look at the guideposts here in terms of First Amendment qualified immunity analysis. And this court has said repeatedly, it's very difficult and only infrequently, infrequently. And this court said that in McVeigh and in Pike will it be clearly established that the sheriff or that the official has transgressed a bright line. And when you have speech that is fairly debatable, and I think the article they attached at least demonstrates it's fairly debatable. Whether he was speaking on any type of corruption or misconduct versus his own grievance, his own dissatisfaction with now being the target of an internal investigation because he was not truthful with investigators. That at least is fairly debatable. And so when you look at the whole picture here, that's where qualified immunity really is applicable. And I think the Supreme Court in the Connick case said not everything that happens in a government office is of public concern. And you have to sort of hold the line somewhere. Durham, public corruption, told to falsify reports to protect the agency from a lawsuit. And here, and again, he elected to include this complaint, this article. You have a sheriff reporting that there's an ongoing confidential investigation that he has now chosen for his own selfish reasons to disclose. But for this alleged inconsistency, if he had been consistent throughout but been impatient or unhappy with the way the investigation was proceeding and went to the media at that point, same result? If he went to the media and said, you know, they told me to lie and say that the suspect shot me, that's not what happened. I think the Sheriff's Department is trying to push this under the rug. I'm not happy with the pace of the proceedings. What happens then? And I think if there's no factual support for that, you can't, I think as the Supreme Court described it, you can't plant the seed for your own constitutional case. In other words, now he's nervous. You know, I've raised this issue and now I'm being looked at. You know, I'm going to go to the media and describe it as some sort of... So now he's creating his own constitutional violation that doesn't actually exist. Because the sheriff is looking at this from a standpoint of, you're the one that's not being truthful if anybody's being truthful. What was it he was not truthful about? Whether the suspect had shot him or whether it was friendly fire. Because in the 95 report, or the, yeah, that's what it's called, the 95 report, he said that the suspect shot him. And then later he said, maybe not. He told city police homicide detectives the suspect shot me. Oh, isn't it reasonable for him to have thought in that situation where they were going into the house and he got shot, that he saw the suspect in front of him, he got shot. But wasn't it reasonable for a police officer to assume at that point that the suspect shot him and not his colleague? That's not, you just don't go, oh, well clearly my colleague shot me in the face or whatever. It's reasonable to assume that he got shot. That wasn't a lie, that wasn't, it doesn't seem to me to be an inconsistency. Well, I think what they were troubled with was he was telling them, you know, in other words... He was telling them what he thought at the time. Right. Well, he told city police investigators the suspect shot him unequivocally. And he later said, now I'm not sure. And the sheriff's office was simply looking at, well, let's see if you were truthful. But he's alleging a constitutional violation by the fact that they were looking into it and potentially looking at him as somebody who had not been truthful. In other words, that that was speech on a matter of public concern when he's not purporting any misconduct. If I may, I want to move because my time is running short to the 11th Amendment community issue. Because I think, again, there is no confusion under state law about whether the sheriffs are state or local officials. They are state officials for all purposes. What about that four-part test in that rammed indicate? That four-part test weighs conclusively in favor of the sheriff being a state officer. But the state law is only one part of it. The state law is only one part. The other part is demonstrated as well. And I'll start with, is the state functionally liable? If this was a Title VII case, we wouldn't be even having this discussion. Because under statutes where Congress has abrogated the state's sovereign immunity, the state is always the nominal defendant. Under Title VII, under Title II of the ADA, under the Rehab Act, there's never any dispute there. Only because the immunity is not waived under 1983, now this has been, you know, this is now an issue. So if this was, for example, a Title VII case brought against Sheriff Anderson, the proper defendant would be the state of Maryland. And the Board of Public Works would have the authority, and they cite the statute in their brief at page 41, but they misconstrue it. The Board of Public Works has the ability to pay a judgment against the sheriff in his official capacity in any other context. Again, as Your Honor pointed out, in this counterfactual world, they're not going to, you know, the answer is, well, we have 11th Amendment immunity, so we wouldn't pay it under 1983. If there was no immunity under 1983, the state would be financially responsible. And there are a number of other indicia of state responsibility. This interconnectedness, they allege, between the city and the sheriff's office is really not helpful at all. All of the sheriff's offices are interconnected with the local governments because the General Assembly has decided that they must fund the office. But that's where the interconnectedness ends. There is no city official anywhere who has any authority at all, operationally or in terms of any personnel or administrative matters, over the sheriff. The General Assembly controls the sheriff's operations, personnel ability to appoint deputies, and that's right there in the statute. The sheriff is subject to the State Ethics Commission. In Oberg, this court mentioned that who represents the sheriff. Are you confessing error and saying we should apply the proper test and still go in your favor? Is that what you're doing? I'm saying I think that Judge Bennett correctly found that the... Did he apply the right law? Was there an error of law? He chose not to apply the randedit test. Well, was that an error of law? I don't think so. And I think that this court... You don't think so? I don't believe so, Your Honor. I think that this court... We were saying it's not an error of law, that he's entitled to just apply Maryland law and ignore the Fourth Circuit opinion. No, I think he found that the randedit test had already been fleshed out in other cases. But this court can affirm on any ground... Well, sure we can. Sure we can if we... Sometimes we even do. But sometimes we send it back and say the district court needs to do it first. Because we're a court of review as a general proposition. We don't make decisions in the first instance. That's what the trial courts are for. I think applying the randedit test here by this court would demonstrate conclusively that the sheriff is a state official. There is no authority at all that the city could or would pay. And Your Honor mentioned the issue of, well, is there any dispute between the city and the state? There is none. I'm here almost asking for or absorbing liability potentially because we represent him in all matters. They footnoted, I just want to say briefly, they footnoted... If there's a judgment against him, the state's going to pay him. If there would be a judgment against the sheriff in his official capacity, if we didn't have immunity... What is the judgment against him in his individual capacity? Well, in his individual capacity, no government entity is liable. That's against him. And he would have to apply to the Board of Public Works. The Board of Public Works is the government. He would have to apply at its discretionary at that point. That's part of the state of Maryland, isn't it? Correct. So you're talking about the Board of Public Works of the state of Maryland. It's made up of the governor and two or three other officials. And the treasurer and the comptroller. Correct, Your Honor. But that's the arm of the state of Maryland. So if there's a judgment against him in his individual capacity, the Board of Public Works takes care of it for him. Correct. The state is the only potentially financial... So nothing's coming out of his pocket. Correct. Thank you. I see my time is up. Thank you. Thank you, Mr. Levine. Mr. Fulton. Thank you, Your Honor. May it please the Court. The Eleventh Amendment Inquiry and the Monell Inquiry are two very distinct analyses. The one, as has been discussed, they do turn on very similar facts, though. However, with respect to the Monell Inquiry, the final policymaker... Are you a representative of the city? Yes, Your Honor. I do. With respect to the analysis under Monell with regards to the final policymaker aspect, the Supreme Court and proponent explained that state law, which may include the valid local ordinances and regulations, will always direct the court to some official that has the responsibility for making law or setting policy in any given area of the local government's business. And here, it is clear that that individual is not Sheriff Anderson. Instead, he is a state policymaker. And in that particular position, he is a constitutionally elected state official. He has the authority, which has been delegated directly from the state to hire, to determine the factors for hiring and for firing, terminating deputy sheriffs. The city has absolutely no involvement in those manners and is strictly forbidden. It is not listed in their charter. It is not listed in the executive policies or anything of that nature within the city's charter. It is a constitutionally and state-mandated policies that are given or delegated to the sheriff, and in this case, Sheriff Anderson. Who pays his salary? The city does pay the salary. However, that salary requirement is mandated by the state. The state requires that the city funds the sheriff's office adequately, and that does include setting and requiring that the city pay a certain salary figure. And I would note that the funding requirements as stated in Rutger, the Hartford County, that there are many more important issues with respect to that. The city is only required to fund as a result of the state mandate. It does not simply fund or otherwise manage it on its own accord. So I believe that that particular aspect does not lend itself to a finding that the sheriff is a final policymaker for the decision. It does not allude to the fact that the sheriff or the city is setting policies or that the sheriff is acting as a policymaker for the city of Baltimore. Do the funds for the sheriff's office come from levies and taxes imposed by the city, or are they funds that are provided by the state? Maybe it's just one big pot of the same money. I believe it's a big pot of money. The funds from the state come in, and the taxes come into the general fund. But is it fair to say that it's the city that sets the amount for each year? I believe that the statute, Your Honor, states that the state sets the amount. It requires that it be funded adequately, which requires they set some of the requirements, and the city will fund that amount. Is the city free to provide additional funds, or does it provide additional funds to the sheriff? I don't believe it does, Your Honor. What about the fact that there is a Civilian Review Board that has some input in personnel matters, and apparently in addition to salaries, the city also funds benefits. Is that right? Yes, that is part and parcel to salaries on the city's benefits. Would you say that's not enough? I would argue that's not enough, Your Honor. It does not lend itself. What we're looking at here is the termination of Deputy Sheriff Lane, and whether or not that particular decision represents city policy, or that Sheriff Anderson is a city policy maker. Here, we're not talking about whether or not there is a workers' compensation issue. Something that would represent maybe looking at the money, or where the money is coming from, there may be some other aspect in that regard if there's a dispute over workers' compensation. But that's not the issue here at all. It is whether or not the termination, the personnel decisions, in there, there is clearly no relationship as between the city and the sheriff. Is there any insurance policies that covers it? With respect to Section 9108 of the State Finance and Procurement Article, that explicitly excludes any particular requirement to indemnify by the city with respect to personnel decisions. You didn't answer my question. I'm sorry, Your Honor. There is no, with respect to sheriff's... Not with respect to the city, no. Not with respect to the city? Yes. Is there one by the state? I'm asking you, as an officer of the court, if there is one, and I'm going to ask you after that, who pays the premium? I am not aware of one, Your Honor. Not with respect to the state, as well as the city. You don't know of anything like that? I do not, Your Honor. Briefly, I would like to kind of transition over to the second inquiry with respect to Monell, which are whether or not there is actually a policy. In that regard, Spelman v. McDaniel sets forth three particular elements, the first being identifying the particular policy at issue here, attributing that creation of the policy to the city or the local government at issue, and then proving the causal link, the connection between the particular policy and the constitutional violation. And here, I believe the first two elements are completely absent from Mr. Lane's complaint. I don't believe, if you look at, I believe it is joint appendix on page 14, where it starts the counts or the claims against the city, there is no mention of any type of policy or custom or issue with respect to the city of retaliating against free speech. And therefore, he's completely failed to require a requisite element. In addition, he's never attributed any type of policy, even if he had listed one, to the city, that the termination decision was a city policy. I believe Taylor v. Vermoosh, which is a, I believe it's a Seventh Amendment, Seventh Circuit case, states that unless the city had a policy of retaliating against protected speech, it cannot be liable if the policymaker retaliated against protected speech that they violated rather than… So one decision can't make a policy? Is that what you're arguing? That is one aspect of one… Even one bad decision can't make a policy? It cannot. It could represent someone's… In that instance, Your Honor, what would happen would be the city would basically be under a slippery slope of being always liable for a policymaker that made one bad decision based upon their own personal beliefs or their own underlying ulterior agenda, which is not what I'm suggesting is the case here. I'm suggesting that the city would always be liable if it is a single policy, if there is an aspect or anything of that nature. However, that's not the case. I see my time is up. Thank you. Thank you very much. Mr. Hoffman? Thank you. Yet again, we see not a shred of evidence that the state of Maryland's dignity, much less its treasury, would ever be impacted by this lawsuit going forward. I would like to first at least turn to the issue of qualified immunity, which was raised by the state at some length. This business about inconsistencies and arguments, I'd just like to bring to the court's attention, the trial board actually exonerated Deputy Lane of any false statement. And that can be found at Joint Appendix, page 65, right at the bottom. Charge number two, false statement, he was exonerated of. Deputy Lane was shot through the neck, and he figured that he had been shot by the suspect. As time wore on, and as questions were raised about a third or second mysterious shot that grazed the different deputies' head, Deputy Lane and other deputies began to ask questions. They were told to forget about it. They were transferred out of the Warrant Apprehension Task Force. And ultimately, Deputy Sheriff Lane took his concerns public, just as Michael Andrew did in Andrew v. Clark, just as James Troy Durham did in Durham v. Jones. What Deputy Lane addressed was, in essence, the cover-up of a friendly fire shooting, of the Sheriff's Office response to that, just like Durham v. Jones' cover-up. And secondly, there's a dead murder suspect who may not have actually fired the bullet that shot James Lane. I mean, we've witnessed riots throughout the city of Baltimore when an arrested suspect was injured and died in police custody. Here we have a murder suspect who very well may not have shot Deputy Lane. And importantly, the Sheriff's Office, including the City of Baltimore's Police Department, covering it up through their Internal Affairs Division. Deputy Lane took this public, and it is a matter of public concern. Why else would there be an article raised? Why else would the reporters give the issue such attention? The issue of him making a false statement is itself not something that was argued below. It's certainly not what Judge Bennett ruled upon. And it should not be the basis to affirm Judge Bennett's qualified immunity decision here. With respect to Title VII cases, I'd like to just briefly say, if there's a Title VII judgment against a Sheriff, a Maryland Sheriff, it's still paid by the county. So we're still back to square one with respect to the first Ramdeda test. I heard the state of Maryland concede. We're supposed to know all that. Is that all in this record? I'm sorry. Who pays what and everything? Well, the statutes itself and this court's observation in Dotson clearly said that after the Rucker decision, Maryland legislature got to work and figured out a way to, in a fairly circular manner, make sure that the state of Maryland never pays a judgment. It's heads they win, tails they win, too. And that's what this case is about, and that's why this case needs to be reversed, particularly on the Eleventh Amendment immunity. What do you mean, be sent back for discovery? Reversed and remanded for the discovery. And if I could say something about the discovery, of course, I believe that discovery is needed because we do see and we do need information as to the city setting the budget. The city is not just paying salaries and some stationery. The city has established the Baltimore City Sheriff's Office and it holds it out on its own websites as its own. This is not just some state agency that's funded by the city of Baltimore. The city of Baltimore refers to, again, the Sheriff's Office as its own agency. They've adopted it. They've more than adopted it. It is functionally an agency of the city of Baltimore, despite any labels that are placed on it by the state. And, of course, state labels do not justify immunity from federal claims, particularly under the Eleventh Amendment. With respect to, I would like to, I'm sorry, my time is up.  I would like to say that there is an emphasis in this court's decisions and in other courts' appeals that sheriffs are elected by county or, in this case, city voters. And, therefore, the decision that he made, of course, he made the final decision with respect to Deputy Sheriff Lane, that his policy does reflect city policy with respect to employment. The employment... I didn't mean to give you a free rein. Okay. We'll call it a day. Thank you very much. We'll come down and greet counsel and take a brief break and reconstitute the panel. Appreciate counsel's good work. This court will take a brief recess.
judges: Robert B. King, Albert Diaz, Stephanie D. Thacker